UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNILOC USA, INC., et al., | CASE NO. C17-1558JLR |
| Plaintiffs, | ORDER GRANTING MOTION |
| v. | TO DISMISS |
| HTC AMERICA, INC., | |
| Defendant. | |

## I. INTRODUCTION

Before the court is Defendant HTC America, Inc.'s ("HTC") motion to dismiss

Plaintiffs Uniloc USA, Inc. ("Uniloc USA") and Uniloc Luxembourg, S.A.'s ("Uniloc

Luxembourg") (collectively, "Uniloc") amended complaint. (MTD (Dkt. # 33).) Uniloc

opposes the motion. (Resp. (Dkt. # 39).) The court has considered the motion, the

submissions in support of and in opposition to the motion, the relevant portions of the

//

//

record, and the applicable law.  Being fully advised,[1] the court grants HTC's motion for the reasons set forth below.

## II.    BACKGROUND

**A.    Factual Background**

### 1.  <u>The Parties</u>

On October 20, 2017, Uniloc filed this patent infringement case.  (*See* Compl. (Dkt. # 1); *see also* Am. Compl. (Dkt. # 29).)  Uniloc Luxembourg owns U.S. Patent No. 6,622,018 ("the '018 Patent" or "the Patent"), entitled "PORTABLE DEVICE CONTROL CONSOLE WITH WIRELESS CONNECTION," which issued on September 16, 2003.  (Am. Compl. ¶ 5.)  Uniloc USA is the exclusive licensee of the '018 Patent.  (*Id.* ¶ 6.)  HTC makes and sells smartphones.  (*See id.* ¶ 10.)

### 2.  <u>The Asserted Patent</u>

The '018 Patent describes and claims "in various ways and at different levels of specificity" an invention that provides "a way to wirelessly control remotely located devices."  (*Id.* ¶ 7.)  More specifically, the patent claims "a method and system for controlling remote devices over a wireless connection."  (Compl. ¶ 8, Ex. A ("Patent") (Dkt. # 1-1) at 1:9-10; *see also* Am. Compl. ¶ 5 (referencing Exhibit A to the original complaint).)[2]

---

[1] HTC requests oral argument (MTD at 1), but the court determines that oral argument would not be helpful to its disposition of the motion, Local Rules W.D. Wash. LCR 7(b)(4).

[2] "It is well-established that documents attached as exhibits to a complaint are part of the complaint, and may be considered on a motion to dismiss."  *Garcia v. Wells Fargo Bank, N.A.*, No. CV 14-09821 DDP (SSx), 2015 WL 3742815, at *2 (C.D. Cal. June 15, 2015).

The patent discusses the background art, first addressing that many office and household items "are or can be remotely controlled" and listing "televisions, stereos, and the like" as examples. (Patent at 1:26-28.) However, "[r]emote control devices in each of their present forms have a number of associated shortcomings." (*Id.* at 1:31-32.) Those shortcomings include that "a separate remote control device may be required for each device to be controlled"; the "limited range" of existing devices; and the "cumbersome and complex" cabling required to wire such devices together through a central location like a personal computer. (*Id.* at 1:32-33, 45-46, 53-57.) Although "[i]n some instances the separate remotes can be replaced with a universal remote control," such a solution does "not have the resources . . . to allow them to be used with all devices, or they may not be capable of controlling a new device." (*Id.* at 1:34-35, 37-40.) Thus, the patent purports to address a need for a device and method that "can be used to remotely control a variety of different devices and appliances," and is "relatively simple to introduce into existing homes and businesses," "user-friendly," "portable," and "not limited to line-of-sight applications." (*Id.* at 1:66-68, 2:2-6.) Thus, Uniloc asserts that "[t]he invention represented a technological solution to a technological problem." (Am. Compl. ¶ 9.)

//

//

//

//

//

Figure 11 of the Patent illustrates how the claimed method and system work:[3]



(Patent at 14, fig. 11.)  Figure 6 further illustrates one part of that process—"the flow of messages between a controlling device and remote devices in accordance with one embodiment of the present invention" (*id.* at 16)—as follows:



(*id.* at 9, fig. 6).

_____

[3] In the brief description of the drawings, the Patent states that Figure 11 is "a flowchart of the steps in a process for controlling a remote device over a wireless connection in accordance with one embodiment of the present invention."  (Patent at 3:48-50; *see also id.* at 3:17-19 (describing Figure 1, which is the same as Figure 11).)

The Patent provides that in the present embodiment, the "invention pertains to a system and method for controlling remote devices over a wireless connection (e.g., using a radio signal)." (*Id.* at 2:17-19.) Further, in "one embodiment, a portable computer system (e.g., a palmtop or hand-held computer) having a transceiver is used to control compliant devices." (*Id.* at 2:19-23.) That embodiment also involves "a wireless connection between the portable computer system and one or more remote devices is established," and each of those devices "is manifested on a display device of the portable computer system, and one of the devices is selected." (*Id.* at 2:25-29.) And finally, in a preferred embodiment, "the transceiver and the remote devices are Bluetooth-enabled devices." (*Id.* at 2:23-35.) The patent also lists a few additional possible embodiments, involving a stylus element, a rendering of the remote device displayed on the display device, and the movement of the stylus recognized as a command. (*See id.* at 2:31-32, 41-43, 51-53.)

Uniloc alleges that the invention "improved upon existing remote control technology by allowing a wide variety of devices to be controlled from a single portable device and without being in the line of sight of the device desired to be controlled." (Am. Compl. ¶ 7.) According to Uniloc, "the methods and systems the '018 Patent claims" were not "conventional or generic in the industry in 1999" but instead involved novel programming that "other companies in this field had not reduced to practice." (*Id.* ¶ 8.)

//

//

//

### 3. The Asserted Claims

Uniloc asserts claims 1, 5-7, 9-11, 15-17, and 19-20 of the '018 Patent. (*Id.* ¶¶ 10-11.) Of those claims, claims 1 and 11 are independent method and system claims. (*See* Patent at 12:6-20, 13:1-24.) Those claims are as follows:

> 1. A method for controlling a remote device over a wireless connection, said method comprising:
>
> a) establishing said wireless connection between a transceiver and said remote device by: broadcasting a message, said message for locating remote devices within range of said transceiver; and receiving a response from said remote device;
>
> b) manifesting said remote device on a display device;
>
> c) registering a position where contact is made with a surface of an input device, wherein a particular position on said input device is translated into a particular command for controlling said remote device; and
>
> d) transmitting a command to said remote device over said wireless connection.

(*Id.* at 12:6-20.)

> 11. A computer system comprising: a bus; a processor coupled to said bus; a transceiver coupled to said bus; a display device coupled to said bus; and an input device coupled to said bus; said processor for performing a method for controlling a remote device over a wireless connection, said device comprising the computer-implemented steps of:
>
> a) establishing said wireless connection between said transceiver and said remote device by: broadcasting a message, said message for locating remote devices within range of said transceiver; and receiving a response from said remote device;
>
> b) manifesting said remote device on a display device;
>
> c) registering a position where contact is made with a surface of an input device, wherein a particular position on said input device is translated into a particular command for controlling said remote device; and

d) transmitting a command to said remote device over said wireless connection.

(*Id.* at 13:1-24.)

The rest of the claims Uniloc asserts are dependent claims:

5. The method as recited in claim **1** further comprising the steps of: receiving responses from a plurality of remote devices; manifesting each of said plurality of remote devices on said display device; and selecting one of said plurality of remote devices.

6. The method as recited in claim **1** further comprising the step of: displaying on said display device a rendering of a mechanism for controlling said remote device.

7. The method as recited in claim **6** further comprising the step of: contacting a particular position in said rendering, wherein said contacting is translated into a particular command corresponding to said particular position.

9. The method as recited in claim **1** further comprising the steps of: displaying on said display device a menu of commands for controlling said remote device; and contacting a particular position in said menu, wherein said contacting is translated into a particular command corresponding to said particular position.

10. The method as recited in claim **1** wherein said transceiver and said remote device are Bluetooth-enabled devices.

(*Id.* at 12:37-52, 58-67.) The remaining dependent claims—claims 15, 16, 17, 19, and 20—recite the same limitations but for the computer system claimed in claim 11. (*See id.* at 13:42-57, 14:1-11.)

4. Alleged Infringement

Uniloc contends that HTC makes and sells smartphones that infringe the asserted claims. (*See* Am. Compl. ¶¶ 10-14.) Uniloc alleges three theories of infringement: (1) direct infringement, (2) infringement by inducement, and (3) contributory

infringement.  (*See id.* ¶¶ 11-14.)  Uniloc first alleges that HTC directly infringes the '018 Patent "by making, using, offering for sale, selling, and importing the Accused Infringing Smartphones."  (*Id.* ¶ 10.)  Uniloc then alleges that HTC "actively induc[es] others to use, offer for sale, or sell" the infringing smartphones.  (*Id.* ¶ 12.)  More specifically, Uniloc asserts that "HTC's customers who use [the allegedly infringing smartphones] in accordance with HTC's instructions infringe claims of the '018 Patent." (*Id.*)  Those instructions include training videos, demonstrations, brochures, and installation and user guides.  (*Id.*)  Uniloc also alleges that HTC induces infringement "by failing to remove or distinguish infringing features" of the smartphones.  (*Id.*)

Finally, Uniloc alleges a contributory theory of infringement.  (*Id.* ¶ 13.)  As an example, Uniloc contends that the software that allows the infringing smartphones to operate is part of a patented machine, manufacture, combination , or of an apparatus for use in practicing a patented process.  (*Id.* ¶ 14.)  That software, therefore, is "a material part of the claimed inventions and is not a staple article or commodity of commerce suitable for substantial non-infringing use."  (*Id.*)

Uniloc seeks a declaration that HTC has infringed the '018 Patent, damages for HTC's alleged infringement, and attorneys' fees and costs.  (*Id.* at 5.)

**B.  Procedural Background**

On February 9, 2018, HTC moved to dismiss Uniloc's first complaint.[4]  (*See* Orig. MTD (Dkt. # 22).)  In response, Uniloc filed an amended complaint.  (*Compare* Compl.,

---

[4] Although not directly relevant here, the court notes that on October 20, 2017, Uniloc also filed two separate cases against HTC for patent infringement.  *See Uniloc USA, Inc. v. HTC*

*with* Am. Compl. (adding allegations related to patent eligibility)); *see also* Fed. R. Civ. P. 15(a)(1)(B). On March 1, 2018, HTC again moved to dismiss. (*See* MTD.) HTC contends that the asserted claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101. (*Id.* at 10); *see also* 35 U.S.C. § 101. Having recounted the relevant factual and procedural background, the court now turns to HTC's motion to dismiss.

## III.    ANALYSIS

### A.    Legal Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a plaintiff does not have to make "detailed factual allegations," a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint must include sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under

*Am., Inc.*, No. C17-1561JLR (W.D. Wash.); *Uniloc USA, Inc. v. HTC Am., Inc.*, C17-1562JLR (W.D. Wash.). Those cases involved common questions of law and fact but patents that are distinct from the patent at issue here. *See* Fed. R. Civ. 42(a)(2). On November 1, 2018, Uniloc filed a fourth patent infringement case against HTC involving yet another patent. *Uniloc USA, Inc. v. HTC Am., Inc.*, No. C17-1629JLR (W.D. Wash.). Per the parties' request, the court consolidated the first three matters on March 1, 2018. (JSR (Dkt. # 23) at 2-3; 3/1/18 Min. Entry (Dkt. # 24); 3/1/18 Order (Dkt. # 25).) On April 11, 2018, the fourth case was reassigned to the undersigned judge (4/11/18 Order (Dkt. # 26)), and shortly thereafter, the court consolidated that case with the three previously consolidated cases (5/3/18 Order (Dkt. # 27)). On May 31, 2018, Uniloc voluntarily dismissed its claims in Case No. C17-01562JLR. (Vol. Dismissal (Dkt. # 30).)

Rule 12(b)(6), the court can dismiss a complaint based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016). In addition, the court need not permit discovery or construct claims when the court can understand the basic character of the claims on their face for purposes of a Section 101 analysis. *See Ancora Techs., Inc. v. HTC Am., Inc.*, No. C16-1919RAJ, 2017 WL 6389329, at *2, 5 (W.D. Wash. Dec. 14, 2017). "[P]lausible factual allegations," however, may preclude dismissal based on Section 101 where "[n]othing on the record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *FairWarning*, 839 F.3d at 1097 (ellipsis and second alteration in original; internal quotation marks omitted).

**B.    Motion to Dismiss**

HTC seeks dismissal of Uniloc's entire amended complaint because the asserted claims are ineligible for patent protection under 35 U.S.C. § 101. (*See* MTD at 1.) In

doing so, HTC invokes the well-known Supreme Court case, *Alice Corp. Pty. Ltd. v. CLS Bank International*, --- U.S. ---, 134 S. Ct. 2347 (2014). HTC contends under *Alice* that the "claims are directed to the abstract idea of locating and controlling remote devices," and that the "claimed steps describe functionality that is achieved using generic and conventional processes and components." (*Id.* at 10-11.) Uniloc counters that the '018 Patent claims an "innovative technological improvement[]" (Resp. at 5) and therefore claims more than a patent-ineligible abstract idea (*id.* at 7-18).

### 1. Patent Eligibility

The key issue HTC's motion to dismiss raises is whether the Patent claims patent-eligible ideas. (*See, e.g.*, MTD at 10); *Alice*, 134 S. Ct. at 2351-52; *see also In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) (stating that patent eligibility under Section 101 is a question of law). Title 35 U.S.C. § 101 defines eligibility for patent protection. *See Alice*, 134 S. Ct. at 2354; 35 U.S.C. § 101. Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101. Thus, Section 101 implicitly excludes "abstract ideas" as patentable. *See Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (internal quotation marks omitted) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012)). However, the Supreme Court has pointed out that "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 134 S. Ct. at 2354. The main consideration is

whether the patent claims integrate the "building blocks of human ingenuity . . . into something more, thereby transforming them into a patent-eligible invention." *Id.* (internal quotation marks, citation, and alterations omitted).

The Supreme Court articulated a two-part analysis in *Alice*: (1) whether the claims at issue involve the "patent-ineligible concept[]" of abstract ideas, and (2) if so, whether the claims nevertheless amount to an "inventive concept." *Id.* at 2355. The second inquiry requires the court to examine the claimed elements individually and "as an ordered combination." *Id.* The court now undertakes that analysis.

### a. Patent-Ineligible Concept

HTC asserts that the claims fail to recite any specific solution for achieving the result of locating and controlling remote devices and therefore relate only to abstract ideas. (MTD at 11-12.) Specifically, HTC states that claim 1 "merely provides that a generic message is sent and a generic response is received," and that claim 11 "claims the same abstract idea, merely adding a generic 'processor' that carries out the same high-level functional steps."[5] (*Id.* at 12.) In addition, HTC contends that the asserted

------

[5] The Federal Circuit has stated that "[c]ourts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). A claim is not representative, however, "simply because it is an independent claim." *Id.* Uniloc contends that "the broadest patent claims (1 and 11)" are not "representative of the dependent claims." (Resp. at 18.) Uniloc acknowledges that all of the asserted claims "include the limitation that the controlling device must broadcast a message for locating remote devices within range of the device, and receive a response from a remote device." (*Id.*) Uniloc also argues that the dependent claims add further limitations "as to certain features of the touchscreen method" and "Bluetooth technology." (*Id.*) In doing so, however, Uniloc only explicitly discusses claims 10 and 20, which are related to Bluetooth-enabled devices. (*See id.* at 11, 16.) The court thus addresses separately only those specific dependent claims. *See infra*

dependent claims "add nothing of substance" because they "merely state variations of the same functional steps."  (*Id.*)  In sum, HTC contends that the asserted claims are "result-focused" (*id.*) and are not directed to an improvement in computer technology or solving a specific technological problem through a technology-based solution (*id.* at 13).

In response, Uniloc relies on the prosecution history for the '018 Patent, which Uniloc contends shows that the "portion of the invention that made the claims of the '018 Patent patentable, in the eyes of the examiner, was the inventor's incorporating . . . a transceiver that broadcasts a message . . . for locating remove devices within range of the transceiver, and receives a response from those devices."  (Resp. at 11.)  Thus, Uniloc views the '018 Patent as directed to "a specific method or means of establishing a connection with compliant devices."  (*Id.*)  In addition, Uniloc specifically relies on the limitations in claims 10 and 20 that require a Bluetooth-enabled transceiver and remote device.  (*Id.*)  Uniloc also argues that the claims are directed to improving the technological capabilities of controlling remote devices.  (*Id.* at 12.)

There is no "bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework."  *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1081 (N.D. Cal. 2016).  Thus, the Federal Circuit instructs courts to begin by comparing "claims at issue to those claims already found to be directed to an abstract idea in

§ III.B.1.a-b; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). (stating that the appellant had not presented "any meaningful argument for the distinctive significance of any claim limitations other than those" in one claim).

previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *see also id.* at 1335 (describing this step of the *Alice* inquiry as applying "a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter'" (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)); *see also Papst Licensing*, 193 F. Supp. 3d at 1081-82 (noting that courts considering computer-implemented inventions have taken varied approaches to determining whether particular claims are directed to an abstract idea, such as whether the asserted claims improve "the functioning of the computer itself" or "an existing technological process"; solve a problem "particular to the [i]nternet"; or involve processes that could not be performed with the human mind or done with pen and paper). In cases such as this one, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. The court thus determines whether the claims "focus on a specific means or method that improves the relevant technology" or instead are "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016). In making that determination, the court must be careful not to oversimplify the claims. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

The parties categorize their arguments as follows: (1) whether the asserted claims are directed towards a result or a specific means or method, and (2) whether the asserted

claims involve a technological improvement.  (*See* MTD at 12-13; Resp. at 11-12.)  The court addresses the arguments in turn.

### i.   Result or Specific Means or Method

The court concludes that because the asserted claims are directed towards the result—and therefore, abstract idea—of wirelessly controlling remote devices, they are patent-ineligible.  The specification refers to "[a] method for controlling a remote device[] over a wireless connection" (Patent at 12:7-8), "underscor[ing] that [the asserted claims are] directed to an abstract concept," *TLI Commc'ns*, 823 F.3d at 611.  More importantly, the asserted claims provide only for generic processes and components to achieve that result.  (*See, e.g.*, Patent at 12:6-20, 37-52, 58-67, 13:1-24, 42-57, 14:1-11); *see also Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).  For example, the method in claim 1 calls for establishing a wireless connection between a transceiver and a remote device by broadcasting a message, manifesting the remote device on a display device, making contact with the display device to issue a particular command for controlling the remote device, and then sending that command wirelessly to the remote device.  (Patent at 12:7-20); *see also CertusView Techs., LLC v. S & N Locating Servs., LLC*, 111 F. Supp. 3d 688, 714 (E.D. Va. 2015) (referring to an asserted "display device" as "generic").  Thus, the method invokes only generic processes:  broadcasting a message, displaying something on a display device, using that device to issue a command, and then sending the command.  (*See* Patent at 12:7-20.)

Claim 11 similarly includes only generic computer components, listing a bus, processor, transceiver, display device, and input device, which are used to implement the

steps in claim 1. (*Id.* at 13:1-24; *see also id.* at 12:7-20); *see also TLI Commnc'ns*, 823 F.3d at 611 (stating that a result will be an abstract idea when "the recited physical components merely provide a generic environment in which to carry out the abstract idea"); *OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008-EJD, 2016 WL 344845, at *5 (N.D. Cal. Jan. 28, 2016) ("None of these generic components constitute meaningful limitations beyond the implementation of the method steps of claim 1 on a general purpose computer."). The Patent therefore claims a result, not a specific means of improving the relevant technology. *Cf. McRo*, 837 F.3d at 1315 (stating that "[t]he claimed processes uses a combined order of specific rules that renders information into a specific format that is then used and applied to create desired results").

Moreover, although they are more specific, the dependent claims do not transform the otherwise generic method and system claimed in independent claims 1 and 11 because the dependent claims likewise describe generic processes. (*See, e.g.*, Patent at 12:6-20, 13:1-24); *see also McRo*, 837 F.3d at 1314 (stating that claims are patent-ineligible when they "merely invoke generic processes"); *Mankes v. Fandango, LLC*, 238 F. Supp. 3d 751, 758 (E.D.N.C. 2017), *aff'd* 720 F. App'x 1022 (Fed. Cir. May 1, 2018) (stating that although the method claims provided specific rules, the claims nonetheless invoked generic processes and machinery). Uniloc contends that the dependent claims provide for a touchscreen method and use of Bluetooth-enabled devices, thereby reciting a specific method. (*See* Resp. at 11.) Uniloc addresses no specific dependent claims aside from claims 10 and 20, which both relate to Bluetooth. (*See generally id.* at 11-13.) Those two claims, however, do not transform the method

and system in claims 1 and 11 because Bluetooth-enabled devices are "generic computer hardware." *See Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 17-cv-05928-YGR, 2018 WL 1610690, at *7 (N.D. Cal. Apr. 3, 2018) (concluding that a patent merely "utilize[d] generic computer hardware and software components," including, among other things, a paired Bluetooth connection).

Even considering the other dependent claims, *see supra* n.5, they merely state generic processes. For example, claim 5 limits the method in claim 1 by adding the steps of "receiving responses from a plurality of remote devices; manifesting each of said plurality of remote devices on said display device; and selecting one of said plurality of remote devices." (Patent at 12:37-43; *see also id.* at 13:42-47 (claiming the same limitation related to claim 11).) Similarly, claim 6 provides the limitation of "displaying on said device a rendering of a mechanism for controlling said remote device." (*Id.* at 12:44-47; *see also id.* at 13:48-51 (claiming the same limitation related to claim 11).) And as a final example, claim 9 limits the method by displaying on the display device a menu of commands for controlling a remote device and contacting a particular position in that menu. (*Id.* at 12:58-64; *see also id.* at 14:1-9 (claiming the same limitation related to claim 11).) Thus, even if Uniloc had fully fleshed out its argument that the dependent claims relate to a touchscreen method, those claims nonetheless invoke generic processes.

//

//

//

The Patent's prosecution history does not change the court's analysis.[6]  (*See* Resp. at 8-11; *see also* Brodner Decl. (Dkt. # 40).)  Although the court must accept as true factual allegations in the prosecution history, "[a]n examiner's statements about a patent are not themselves evidence of the patent's validity."  *FitBit Inc. v. AliphCom*, No. 16-cv-00118-BLF, 2017 WL 3129989, at *2 (N.D. Cal. July 24, 2017); *see also MacroPoint, LLC v. FourKites, Inc.*, No. 1:15 CV 1002, 2015 WL 6870118, at *7 n.3 (N.D. Ohio Nov. 6, 2015) ("Nothing in the Reasons for Allowance dictate a finding that these concepts are inventive on the issue of patent-eligible subject matter.").  The patent examiner stated that "the record of prior art fails to teach a method of controlling remote device over wireless communication link by transmitting a command to the remote device, as specifically mentioned in claim [1]."[7]  (Brodner Decl. ¶ 9, Ex. F at 2.)  In spite of that statement, however, the patent itself claims a result achieved by using generic processes.  Although the court accepts as true the examiner's statement, the content of the

_____

[6] The court may take judicial notice of the prosecution history.  *See Integrated Tech. Sys., Inc. v. First Internet Bank of Ind.*, No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195, at *2 (E.D. Tex. Jan. 30, 2017) ("Courts evaluating patent-eligibility at the pleading stage [may] consider the asserted patent and relevant prosecution history as matters of public record appropriate for judicial notice."); Fed. R. Evid. 201(b).

[7] Mr. Brodner further offers his opinion that "[i]t would also appear, from the prosecution history, including the reasons for allowance, that the patent examiner was not able to find prior art that both had that feature and used it in a way in which it would have been obvious to combine it in a system for controlling remote devices in the way that the inventor did in this patent."  (Brodner Decl. ¶ 10.)  At the motion to dismiss stage, the court need not credit Mr. Brodner's opinion.  *See Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, 137 F. Supp. 3d 1157, 1163 n.5 (N.D. Cal. 2015) (stating that it was not appropriate for the court to consider an expert declaration on a motion to dismiss based on patent ineligibility); *cf. Glasswall Sols. Ltd. v. Clearswift Ltd.*, No. C16-1833RAJ, 2017 WL 5882415, at *1 n.1 (W.D. Wash. Nov. 29, 2017) (declining to consider declarations in deciding a motion to dismiss based on patent ineligibility).

statement does not support concluding that the asserted claims are patent eligible under step one of *Alice*. *See FitBit*, 2017 WL 3129989, at *2; *MacroPoint*, 2015 WL 6870118, at *7 n.3. Thus, the court concludes that the asserted claims are directed to a result, not a specific means or method.

ii. Technological Improvement

Nor do the asserted claims represent a technological improvement. In looking at whether a patent claims a technological improvement, the Federal Circuit instructs that the inquiry is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. Here, the patent describes a method and system for which technology—including a computer, display device, and Bluetooth capability—are invoked merely as tools. (*See* Patent at 12:7-20, 44-52, 58-67, 13:48-51, 14:9-11.) Indeed, "the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of" controlling remote devices over a wireless connection. *See TLI Commc'ns*, 823 F.3d at 611. And although the Patent purports to solve a number of problems with remotely controlling devices, it does not solve those problems through an improvement in any specific technology. *Cf. Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018) (stating that the question was whether the method described in the patent "constitutes an improvement in computer functionality"); (*see also* Patent at 1:32-33, 45-46, 53-57, 66-68, 2:2-6.) Thus, although the claimed method

//

and system can be characterized as an improvement, they are not technological

improvements eligible for patent protection.

Uniloc attempts to paint the claimed method and system as technological

improvements by classifying them as "an improvement in the capabilities of controlling

remote devices." (Resp. at 12.) Uniloc specifically argues that the asserted claims

"introduce[] a means of establishing a connection with multiple compliant remote devices

within range, and use[] a touchscreen method of remote control of those devices, a

combination that—on this record—persons of skill in the art in 2000 had not thought to

employ." (*Id.* at 13; *see also* Am. Compl. ¶¶ 7-8.) Uniloc further relies on *Core Wireless

Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018), in

which the Federal Circuit held that "the claims are directed to an improvement in the

functioning of computers, particularly those with small screens."

Here, however, the improvement is actually in the controlling of remote devices—

i.e., the result—not in the "capabilities" that produce that result. (*See* Resp. at 12); *TLI

Commc'ns*, 823 F.3d at 612 ("The specification fails to provide any technical details for

the tangible components, but instead predominately describes the system and methods in

purely functional terms."). In short, "[a] novel abstract idea is still an abstract idea."

*Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 937 (N.D. Cal. 2015), *aff'd*, No.

2015-1917, 2016 WL 6575091 (Fed. Cir. Nov. 7, 2016). For these reasons, the court

concludes that the asserted claims do not amount to a patent-eligible technological

improvement.

*//*

Having found that the asserted claims are ineligible under step one of the *Alice* inquiry, the court now turns to step two.

### b. Inventive Concept

In the second step of the *Alice* analysis, the court searches for an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357; *see also Papst Licensing*, 193 F. Supp. 3d at 1082-83 ("[T]he second step of the *Alice* analysis (the search for an 'inventive concept') asks whether the claim contains an element or combination of elements that ensures that the patent in practice amounts to significantly more than a patent upon the abstract idea itself."). The court must consider the elements of the claim, both individually and as an ordered combination, to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea. *See Bascom Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that an inventive concept may be found in the non-conventional and non-generic arrangement of components that are individually well-known and conventional). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the elements of the claim to determine whether it contains an 'inventive concept.'"). "[W]hen the claim limitations involve more than the performance of well-understood, routine, and conventional activities previously known to the industry," there is such an inventive concept. *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018); *cf. Dealertrack, Inc. v. Huber*, 674 F.3d

1315, 1334 (Fed. Cir. 2012) (stating that details not included in the claims do not provide an otherwise absent inventive concept).  The fact that something is disclosed in the prior art alone does not establish that the technology is well-understood, routine, and conventional.  *Berkheimer*, 881 F.3d at 1369.

Although patent eligibility under Section 101 is a legal question, "[t]he question of whether a claim element or combination of elements is well-understood, routine[,] and conventional to a skilled artisan in the relevant field is a question of fact."[8]  *Id.* at 1368.  This "subsidiary" factual question "must be resolved en route to the ultimate legal determination" of patent eligibility.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  Thus, when a complaint contains "concrete allegations . . . that individual elements and the claimed combination are not well-understood, routine, or conventional activity," dismissal under Rule 12(b)(6) is inappropriate.  *Id.*  However, "not every [Section] 101 determination contains genuine disputes over the underlying facts material to the [Section] 101 inquiry."  *Berkheimer*, 881 F.3d at 1368; *see also id.* (noting that its reversal of summary judgment due to a genuine dispute regarding whether something was well-understood, routine, and conventional did not cast doubt on other cases granting a motion to dismiss).

HTC contends that there is no inventive concept because the asserted claims reference well-known and conventional technology (MTD at 15-17), the claims lack an inventive ordered combination (*id.* at 17-18), and Uniloc's complaint fails to create a

---

[8] The party asserting ineligibility must prove by clear and convincing evidence that the activities are well-understood, routine, and conventional.  *Id.* at 1368.

reasonable inference that the asserted claims are directed to an inventive concept (*id.* at 18-19). Uniloc argues that the same features that make the claims non-abstract also demonstrate an inventive concept—"the introduction[] into a system for remote control, of a specific means or method of establishing wireless communication" by using a "transceiver that broadcasts a message for locating complaint remote devices within range, and receives a response from those devices." (Resp. at 14.) Uniloc also contends that "the use of the touchscreen method to remotely control the features" provides an inventive concept. (*Id.*) According to Uniloc, none of those features—particularly in combination—were conventional in 2000, the time of the patent application. (*Id.*)

Here, Uniloc's factual allegations coupled with language from the Patent do not demonstrate an inventive concept. Uniloc's amended complaint itself contains only conclusory allegations about the processes not being well-understood, routine, or conventional. (*See* Am. Compl. ¶¶ 8-9; MTD at 18-19; Reply (Dkt. # 43) at 8-11.) Uniloc asserts that "the method and systems the '018 [P]atent claims[] were not conventional or generic in the industry in 1999, but rather involved or contain[ed] programming that represented a novel . . . approach that other companies in this field had not reduced to practice."[9] (Am Compl. ¶ 8.) Simply stating that the claimed method and systems were not conventional at the time of the patent application does not make it so, and the court need not credit such conclusory statements. *See Pareto v. Fed. Deposit Ins.*

---

[9] The inventor of the '018 Patent submitted his application in 2000, and the patent issued in 2003, so it is unclear why Uniloc references 1999. (*See* Patent at 1 (stating date of filing of the Patent).)

1 *Corp.*, 139 F.3d 696, 699 (9th Cir. 1998) (stating that "conclusory allegations of law and

2 unwarranted inferences are not sufficient to defeat a motion to dismiss"). Uniloc further

3 asserts that "[t]he written description of the '018 [P]atent describes, in technical detail,

4 each of the limitations in the claims, allowing a person of skill in the art to . . . understand

5 how the nonconventional and non-generic ordered combination of the elements of the

6 claims differs markedly from what had been conventional or generic in the industry in

7 1999." (Am. Compl. ¶ 9.) Again, Uniloc's conclusory statement is devoid of factual

8 content necessary to support its allegation. *See Mooradian v. Wright Med. Tech., Inc.*,

9 No. 14cv02445-MMA (DHB), 2015 WL 12513465, at *2 (S.D. Cal. Feb. 25, 2015)

10 (noting that it is improper for a court to assume a plaintiff can prove facts that it has not

11 alleged). Indeed, Uniloc does not even identify the portion of the Patent that purportedly

12 allows a person skilled in the art to understand the inventive concept allegedly claimed.

13 (*See* Am. Compl. ¶ 9.) For those reasons, the court finds nothing in the amended

14 complaint itself to support an inventive concept sufficient to transform the abstract idea

15 into something patent-eligible.

16     But the court also looks to the language of the '018 Patent to determine whether

17 any individual elements or a combination of those elements demonstrates an inventive

18 concept. *See RecogniCorp*, 855 F.3d at 1327. In doing so and viewing the Patent itself

19 in the light most favorable to Uniloc, there is nothing in the specification or claims

20 showing that the claimed method and systems—viewing the components individually and

21 in combination—were not well-understood, routine, or conventional.

22 //

1    In its response, Uniloc specifically identifies two components as providing the

2    necessary inventive concept: (1) a touchscreen, and (2) use of Bluetooth-enabled

3    devices. (*See* Resp. at 14.) Nothing in the Patent itself, however, supports that the use of

4    those components was not well-understood, routine, or conventional at the time. *See*

5    *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 2018 WL 935455,

6    at *5 (Fed. Cir. 2018) (stating that the "[m]ere recitation of concrete, tangible

7    components is insufficient to confer patent eligibility to an otherwise abstract idea").

8    First, as to the claimed touchscreen, nothing in the Patent suggests that touchscreens were

9    not well-understood, routine, and conventional at the time of the Patent. Indeed, Uniloc

10   mostly addresses what it now labels a touchscreen as a "display device" throughout the

11   patent. (*See, e.g.*, *id.* at 2:27-29 (explaining that "[e]ach of the remote devices is

12   manifested on a display device of the portable computer system"); *but see id.* at

13   5:66-6:1.) Thus, on this record, the touchscreen element is not inventive.

14        Nor is the integration of Bluetooth-enabled devices inventive.[10] Again, nothing in

15   the Patent explicitly addresses any unconventional or non-routine use of Bluetooth

16   technology in the claimed method and systems, even though the Patent makes clear that

17   the preferred embodiment incorporates such technology. (Patent at 12:65-67, 14:9-11.)

---

18        [10] Uniloc contends that whether the independent claims should be limited to Bluetooth

19   systems when read in the light of the specification is a matter for claim construction. (Resp. at
     16.) The court finds no need to engage in claim construction, however, before ruling in HTC's

20   favor. *See Ancora Techs.*, 2017 WL 6389329, at *2, 5. To the extent there is actually a claim
     construction dispute, the court may nonetheless proceed "by adopting the non-moving party's

21   constructions." *Aatrix Software*, 882 F.3d at 1125. But, even if court adopts Uniloc's
     construction, there is no indication from Uniloc's conclusory allegations or the Patent itself that

22   Bluetooth was not a well-understood, routine, or conventional technology at the time of the
     Patent.

Moreover, the way in which the Patent's specification describes Bluetooth technology lends no credence to Uniloc's argument. The Patent explains what the technology does, how it works, and how it can be used. (*Id.* at 4:54-64; 5:14.) But those explanations give no indication that the technology was not well-known, routine, and conventional at the time. The Patent also specifically states that Bluetooth technology could enable "Bluetooth transceivers built into both a cellular telephone and a laptop computer system [to] replace the cables used today to connect a laptop to a cellular telephone." (*Id.* at 4:65-67.) That specific statement could suggest that Bluetooth had not yet been used routinely or conventionally to connect laptop computers to cell phones. However, that statement alone does not show that Bluetooth as used in the claimed method and system was not well-understood, routine, or conventional because it is not captured in the claims themselves. *See Berkheimer*, 881 F.3d at 1369 (stating that the court "must analyze the asserted claims and determine whether they actually capture these improvements").

Uniloc asserts that "these features"—presumably meaning Bluetooth and a touchscreen—are "almost universal in 2018," but "in the antediluvian 2000 era, [they], and particularly their combination, were not at all conventional." (Resp. at 14.) The problem with Uniloc's assertion, however, is that the Patent fails to demonstrate that any of the features Uniloc describes were not well-understood, routine, and conventional at the time. Indeed, the Patent states that "it will be obvious to one of ordinary skill in the art that the present invention may be practiced without these specific details." (Patent at 3:66-4:1.) And as to Bluetooth technology specifically, after noting that the Patent discusses the present invention "primarily in a context" involving "devices and systems

compliant with the Bluetooth technology" (*id.* at 4:41, 43-44), the Patent states that "the present invention may be utilized with devices and systems compliant with standards different from Bluetooth, such as the IEEE (Institute of Electronic and Electrical Engineering) 802.11 standard" (*id.* at 4:49-52). Thus, the main component—Bluetooth technology—upon which Uniloc relies to show an inventive concept is not even necessary for the claimed invention.[11]

Thus, for those reasons, the individual claimed elements do not support an inventive concept. The court thus looks at whether those elements as a combination do so. "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. Thus, the court's analysis somewhat overlaps with its analysis regarding whether any of the individual components amounted to an invented concept.

The court further concludes that there is no inventive concept arising from a combination of the individual components. First, as stated above, Uniloc's amended complaint contains no specific factual allegations in this regard. (*See* Am. Compl. ¶¶ 8-9.) The Patent also reveals no inventive concept in the combination of elements and processes comprising the claimed method and systems. (*See* Patent.) Viewing those elements and processes—and thus, the independent and dependent claims—in combination, the Patent at most claims an improvement in the result of remote controlling—itself a patent-ineligible concept. *See supra* § III.B.1.a; *Uniloc USA, Inc. v.*

---

[11] Those parts of the Patent also undermine Uniloc's contention that claim construction would show the Bluetooth technology applies to all of the claims. *See supra* n.10.

*Apple, Inc.*, No. C 18-00358 WHA, 2018 WL 2287675, at *7 (N.D. Cal. May 18, 2018)

(stating during the step-two analysis that the claimed "improvements all pertain to

*results*—specifically, results flowing from an underlying patent-ineligible concept rather

than from any specific hardware configuration disclosed by" the patent).  In addition, the

Patent claims no specific combination that is used in an unconventional manner.  *See*

*TriPlay, Inc. v. WhatsApp, Inc.*, No. 13-1703-LPS-CJB, 2018 WL 1479027, at *8 (D.

Del. Mar. 27, 2018).  In addition, the fact that the Bluetooth technology is not necessary

to the invention belies that the combination is inventive.  (*See* Patent at 3:66-4:1, 49-52.)

For these reasons, the court finds no combination that amounts to an inventive concept.

Uniloc attempts to skirt the lack of an inventive concept by focusing significantly

on the burden on proof.  (*See* Resp. at 14-15.)  Uniloc contends that HTC must

demonstrate that a claimed component or combination is well-understood, routine, and

conventional by clear and convincing evidence, but has provided no evidence at all, let

alone clear and convincing evidence.  (*See id.*)  Although Uniloc is correct about the

burden of proof required, *see Berkheimer*, 881 F.3d at 1368, the court must determine

whether Uniloc's factual allegations give rise to a plausible inference of an inventive

concept, and thus whether the Patent claims something more than a well-understood,

routine, and conventional method, system, or components.[12]  The court has not found

---

[12] It is unclear whether the defendant must make such a showing by clear and convincing evidence at the motion to dismiss stage.  *See Cellspin Soft*, 2018 WL 1610690, at *10 n.12 (noting that "*Berkheimer* addressed a defendant's burden at the summary judgment stage, not in the context of a motion to dismiss"); *see also Aatrix Software*, 882 F.3d at 1128 (reversing a district court's dismissal where the proposed amended complaint contained sufficient factual

such allegations or content in the Patent itself.  *See T-Jat Sys. 2006, Ltd. v. Expedia, Inc.*, No. 16-581-RGA, 2018 WL 1525496, at *6 (D. Del. Mar. 28, 2018) (applying the clear and convincing evidence standard and identifying no inventive concept from the plaintiff's conclusory arguments and lack of concrete allegations).  Thus, the fact that HTC presents no affirmative evidence does not save Uniloc's complaint from dismissal.  *Cf. Aatrix Software*, 882 F.3d at 1128 (not addressing the clear and convincing evidentiary burden and holding that a district court should have not dismissed where the plaintiff offered a proposed amended complaint with factual allegations "that individual elements and the claimed combination are not well-understood, routine, or conventional activity" and "regarding the claimed combination's improvement to the functioning of the computer").

The court therefore grants HTC's motion to dismiss because the Patent (1) claims a patent-ineligible abstract idea, and (2) contains no inventive concept sufficient to transform that abstract idea into something more.  *See Alice*, 134 S. Ct. at 2355.

## 2. Leave to Amend

Neither party addresses the propriety of leave to amend.  (*See generally* MTD; Resp.)  A court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Courts in the Ninth Circuit apply this policy with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend

---

allegations regarding whether the patent claimed component or combination is well-understood, routine, and conventional, and not mentioning the clear and convincing evidence standard).

should be granted even if no request to amend was made).  However, the court may dismiss a complaint without leave to amend when amendment would be futile.  *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).  Amendment is futile when the plaintiff cannot cure the deficiencies in the complaint.  *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  In the patent eligibility context, courts have denied plaintiffs leave to amend as futile.  *See Purepredictive, Inc. v. H20 AI, Inc.*, No. 17-cv-03049-WHO, 2017 WL 3721480, at *7 (N.D. Cal. Aug. 29, 2017) (stating that leave to amend would be futile and that the plaintiff had not asked for leave to amend); *see also Blue Spike, LLC v. Google Inc.*, No. 14-cv-01650-YGR, 2015 WL 5260506, at *11 (N.D. Cal. Sept. 8, 2015).

Likewise, the court here concludes that leave to amend would be futile.  Although Uniloc attempted to show a factual dispute underpinning the legal question under Section 101, *see supra* § III.B.1.b, Uniloc's conclusory argument and allegations to that effect, as well as the lack of material in the Patent suggesting that the claimed processes components were not well-understood, routine, or conventional at the time, suggests that further amendment would be futile.  Indeed, even assuming Uniloc could add factual allegations, Uniloc has already amended its complaint once to address patent eligibility (*See generally* Am. Compl.)  In HTC's first motion to dismiss, HTC argued that the asserted claims were patent-ineligible, and Uniloc amended its complaint with allegations going to that argument.  (*See* Orig. MTD (arguing that the claims asserted in the original complaint were patent-ineligible); Am. Compl. ¶¶ 8-9.)  Thus, the court concludes that any further attempts to amend would be futile.

## IV.    CONCLUSION

For the reasons set forth above, the court GRANTS HTC's motion to dismiss (Dkt. # 33).

Dated this 14th day of June, 2018.

JAMES L. ROBART
United States District Judge